IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GREGORY PADILLA,

      Plaintiff,

vs.                                                                     No. CIV 03-0564 RB/RHS

QWEST CORPORATION, and
ALLEN ANDREWS, in his individual
capacity,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** came before the Court on the Motion to Dismiss by Defendant Qwest Corporation (Doc. 4), filed on June 19, 2003. Jurisdiction is founded upon 28 U.S.C §§ 1331 and 1367. Having reviewed the submissions of the parties and the relevant law, the Court finds that the motion is well-taken in part and should be granted in part and denied in part.

**I.**      **Background.**

Padilla claims that Qwest and Andrews[1] discriminated against him on the basis of his national origin and age in violation of Title VII and the Age Discrimination in Employment Act (ADEA), and retaliated against him for engaging in protected activity in violation of Title VII. (Compl. ¶ 7.) Padilla also alleges supplemental claims for breach of contract to provide a workplace free of discrimination, harassment, hostility, and retaliation; breach of implied covenant of good faith and fair dealing; and wrongful termination.

Padilla, who is Hispanic, was forty-six years old as of May 2003. (Compl. ¶ 5.) In June 1997, Qwest hired Padilla to work as a Network Technician in its Silver City, New Mexico facility. (*Id.*)

---

[1] Nothing in the record indicates that Andrews has been served.

Padilla claims that throughout his employment, younger employees were given preferential work assignments and better equipment, and that certain Anglo employees were exempted from company rules. (*Id*. ¶¶ 9-10.) Andrews was his supervisor at all pertinent times. (Compl. ¶ 3.)

On April 22, 2002, Qwest suspended Padilla without pay for misuse of a company cell phone and for being out of area on a coffee break. (*Id*. ¶ 8.) Padilla alleges that Anglo co-workers who engaged in the same activities were not disciplined. (*Id*.) On July 23, 2002, Padilla filed a charge of discrimination with the EEOC. (Compl. ¶ 11.) On July 30, 2002, Qwest discharged Padilla. (*Id*. ¶ 12.) After he filed a union grievance, Padilla was reinstated as of November 4, 2002. (*Id*. ¶ 13.)

On June 19, 2003, Qwest moved to dismiss.

**II.     Summary of Pending Arguments**.

Qwest argues that: (1) Padilla cannot establish a prima facie case under Title VII or the ADEA because he was not subjected to an adverse employment action and he was not replaced by a person outside of a protected class; (2) the breach of contract and breach of good faith and fair dealing claims are preempted because Padilla was covered by a collective bargaining agreement (CBA); and (3) the wrongful discharge claim is not cognizable.

Padilla responds that: (1) he suffered adverse employment actions in the form of suspension, disparate treatment, and loss of advancement opportunities and economic damages during his termination; (2) he was replaced by a younger worker during his termination; (3) the contract claims are independent of the CBA; and (4) the wrongful discharge claim is pleaded in the alternative.

Qwest replies that: (1) the resolution notes of the union grievance prove that Padilla was made whole; (2) the contract claims are preempted because they are inextricably intertwined with the CBA; and (3) the wrongful discharge claim cannot be pleaded in the alternative.

**III.     Standard for Motion to Dismiss.**

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all the well-pleaded factual allegations of the complaint as true and view them in the light most favorable to the non-moving party. *Sutton v. Utah State Sch. for the Deaf and Blind*, 173 F.3d 1226, 1336 (10th Cir. 1999).  In accepting the complaint's allegations as true, the court must consider whether the complaint, standing alone, is legally sufficient to state a claim upon which relief may be granted. *Ordinance 59 Ass'n v. United States Dep't of Interior*, 163 F.3d 1150, 1152 (10th Cir. 1998). For purposes of ruling on a motion to dismiss for want of standing, the court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

**IV.     Analysis.**

    **A.     Whether the Title VII and ADEA claims should be dismissed because Padilla cannot prove that he suffered an adverse employment action.**

A plaintiff alleging discrimination in violation of the ADEA or Title VII may prove intentional discrimination through direct evidence, or through indirect evidence using the analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973).  Because there is rarely direct evidence of discrimination or retaliation, plaintiffs must often rely on indirect evidence. *Ingels v. Thiokol Corp.*, 42 F.3d 616, 620-621 (10th Cir. 1994).  The prima facie case is usually assessed on summary judgment and not through a motion to dismiss.

When relying on indirect evidence, the plaintiff has the initial burden of establishing a prima facie case by a preponderance of the evidence. *McDonnell Douglas*, 411 U.S. at 802-804. If the plaintiff establishes a prima facie case, then the defendant must "articulate some legitimate, nondiscriminatory reason" for the challenged personnel action. *Id.* The plaintiff then bears the ultimate burden of demonstrating that the defendant's stated reason is in fact a pretext for unlawful discrimination. *Id.* at 804.

The Supreme Court has emphasized that *McDonnell Douglas* never intended to set "an inflexible rule." *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 575 (1978). The ultimate question is whether the plaintiff has shown "actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under the Act." *Furnco*, 438 U.S. at 576. Due to the fluid nature of the inquiry, the elements of the prima facie case vary according to the facts. *McDonnell Douglas*, 411 U.S. at 802 n.13.

An adverse employment action is an element of the prima facie case in disparate treatment and retaliation claims[2] brought under Title VII and the ADEA. *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir. 1998) (discrimination); *Wells v. Colorado Dept. of Transp.*, 325 F.3d 1205, 1212

---

[2] Construed in the light most favorable to Padilla, the Complaint may be read to assert a national origin "hostile or abusive work environment" claim. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986). To establish a prima facie case of hostile work environment, plaintiff must show that: (1) he is a member of a protected class; (2) the conduct in question was unwelcome; (3) the harassment was based on national origin; (4) the harassment was sufficiently severe or pervasive to create an abusive working environment; and (5) some basis exists for imputing liability to the employer. *See Brandau v. State of Kansas*, 968 F.Supp. 1416, 1420 (D. Kan.1997). In other words, a discrete adverse employment action is not an element of the prima facie case in a hostile work environment case. Instead, the plaintiff must show that the discrimination was sufficiently severe or pervasive to create a hostile work environment.

(10th Cir. 2003) (retaliation).  In order to qualify as an adverse employment action, the action must "adversely affect [the employee's] status as an employee." *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 533 (10th Cir. 1998).  Mere inconvenience or an alteration of job responsibilities are insufficient. *Wells*, 325 F.3d at 1213.  The Tenth Circuit liberally interprets the term "adverse employment action" and takes a case-by-case approach in determining whether a given employment action is adverse. *Jeffries v. Kansas*, 147 F.3d 1220, 1231-32 (10th Cir. 1998).

Qwest reasons that since Padilla was reinstated with full back pay and benefits, he was not subjected to an adverse employment action.  Qwest relies on the resolution notes of the union grievance meeting to establish that Padilla was reinstated with full back pay and benefits as of November 4, 2002.  (Def. Ex. 2.)  Padilla does not object to consideration of the resolution notes, but asserts that the reinstatement did not negate the fact that he was discharged.

Generally, when matters outside the pleadings are submitted in support of a motion to dismiss and those materials are considered by the court, the motion must be converted to a motion for summary judgment.  *See* FED. R. CIV. P. 12(b)(6).  However, Qwest maintains that reliance on the resolution notes in applying the Rule 12(b)(6) standard is authorized by *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

In *GFF*, the Tenth Circuit held that if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.  *GFF*, 130 F.3d at 1384.  In *GFF*, the document in question was a bid in the form of letter that was central to the plaintiff's breach of contract claim.  *Id.*, 130 F.3d at 1383.  In the instant case, the resolution notes are not on a similar footing.  Padilla claims discrimination in

5

violation of federal statutes, breach of an employment contract, and wrongful discharge. Although they may be relevant, the resolution notes are not central to any of these causes of action. The resolution notes should not be considered unless the motion is converted to a motion for summary judgment.

In any event, consideration of the resolution notes is unnecessary. Padilla has alleged sufficient facts to withstand the motion to dismiss the federal claims. Padilla alleges that he lost advancement opportunities and suffered economic harm as a result of his termination. Moreover, the April 2002 suspension and was not addressed by the grievance. A suspension without pay qualifies as an adverse employment action. *Sanchez*, 164 F.3d at 534. The allegations of the Complaint, when accepted as true and construed in the light most favorable to Padilla, are sufficient to state an adverse employment action.

In the alternative, Qwest asserts that Padilla is unable to establish a prima facie case because he was not replaced by someone outside a protected class. This argument has at least two fatal flaws. In order to state a prima facie case, a discriminatory discharge claimant need not show that the employer treated similarly situated non-protected employees more favorably. *Hysten v. Burlington Northern and Santa Fe Ry. Co.*, 296 F.3d 1177, 1181 (10th Cir. 2002) (citing *Kendrick v. Penske Transp. Servs., Inc*. 220 F.3d 1220, 1229 (10th Cir. 2000)). When applying *McDonnell Douglas*, the overarching question is whether a plaintiff can show that the employer took actions from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory motive. *Furnco*, 438 U.S. at 576. Padilla need not show that he was replaced by someone outside the protected class, he need only show that his termination occurred under circumstances giving rise to an inference of discrimination. *Hysten*, 296 F,3d at 1181-1182.

The Complaint alleges sufficient facts to withstand the motion to dismiss in this regard.

Qwest's argument also fails because Padilla alleged that he was replaced by a much younger employee during the period that he was separated. (Compl. ¶ 9.) The motion to dismiss should be denied with respect to the Title VII and ADEA claims. Qwest may challenge Padilla's prima facie case through a properly supported motion for summary judgment.

**B.     Whether the breach of contract and breach of good faith and fair dealing claims are preempted by Section 301 of the Labor Management Relations Act.**

Padilla is a union member covered by a CBA. Qwest argues that Section 301 of the LMRA preempts his breach of contract and breach of the covenant of good faith and fair dealing claims because of and the contract claims are intertwined with the CBA. Padilla counters that the contract claims are independent of the CBA.

Section 301 of the Labor Management Relations Act of 1947 ( LMRA) provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U. S. C. § 185(a).

A state-law claim is preempted by § 301 when resolution of the claim requires interpreting a contract between an employer and a labor union representing its employees. *See Garley v. Sandia Corp.*, 236 F.3d 1200, 1210 (10th Cir. 2001). In order to prevent plaintiffs from circumventing §301 through artful pleading, the court may look behind a complaint's allegations to determine whether the wrong complained of actually arises in some manner from a breach of the employer's obligations under a CBA. *Karnes v. Boeing Co.*, 335 F.3d 1189, 1192-93 (10th Cir. 2003) (citing *Mock v. T.G.*

*& Y. Stores Co.*, 971 F.2d 522, 530 (10th Cir. 1992)).

Padilla's breach of contract claim rests on Qwest's alleged verbal and written representations that it would provide Padilla a workplace free of discrimination, harassment, hostility, and retaliation. (Compl. ¶¶ 32-36.) The breach of implied covenant of good faith and fair dealing is based on the same alleged contract. (Compl. ¶¶ 37-41.) Padilla asserts that this agreement is independent from the CBA.

The CBA expressly prohibits the formation of any independent contract between Padilla and Qwest.[3] (Def. Br. Ex. 1.) Indeed, the creation of an outside employment contract is contrary to the concept of collective bargaining, which is intended to forge an exclusive contract controlling all aspects of the employer-employee relationship. *Steinbach v. Dillon Companies, Inc.*, 253 F.3d 538, 540 (10th Cir. 2001); *see also Karnes*, 335 F.3d at 1198 (Hartz, J., dissenting) (observing that such a side agreement would be contrary to federal labor law). In addition, the CBA specifically prohibits unlawful discrimination. (Def. Reply Ex. 1.) Because the anti-discrimination policy is incorporated in the CBA, a determination of whether Padilla was subjected to unlawful discrimination in violation of company policy will inevitably require consideration of the CBA. Because Padilla's contract claims would implicate the CBA, they are preempted by § 301. *Karnes*, 335 F.3d at 1195 (Henry, J., concurring). Qwest's motion to dismiss should be granted with respect to the breach of contract and breach of the covenant of good faith and fair dealing claims.

### C. Whether a wrongful discharge claim is cognizable where the plaintiff is covered by a CBA.

New Mexico substantive law applies to this supplemental claim. *See BankOklahoma*

---

[3] Consideration of the CBA under the Rule 12(b)(6) standard is appropriate because it is central to Padilla's claims. *GFF*, 130 F.3d at 1384.

*Mortgage Corp. v. Capital Title Co.,* 194 F.3d 1089, 1103 (10th Cir. 1999). Under New Mexico law, the tort of retaliatory discharge represents a public policy exception to the traditional at-will employment rule. *Vigil v. Arzola*, 102 N.M. 682, 686-90, 699 P.2d 613, 617-21 (Ct. App.1983), *rev'd in part on other grounds*, 101 N.M. 687, 687 P.2d 1038 (1984), *overruled in part on other grounds by Chavez v. Manville Prods. Corp.*, 108 N.M. 643, 649, 777 P.2d 371, 377 (1989). Retaliatory discharge is a narrow exception to the at-will employment rule and its "genesis and sole application has been in regard to employment at-will." *Silva v. Albuquerque Assembly & Distr.*, 106 N.M. 19, 21, 738 P.2d 513, 515 (1987) (citing *Vasquez v. Mason & Hanger-Silas Mason Co.*, No. CIV 85-0150 HB, 1985 WL 5964 (D. N. M. 1985)).

It is undisputed that Padilla was covered by a CBA. Because Padilla was protected by a CBA, the tort of retaliatory discharge is inapplicable to this case. *Silva*, 106 N.M. at 21, 738 P.2d at 515. Padilla's argument that the wrongful discharge claim is pleaded in the alternative is inapposite in light of the unique character of the tort of wrongful discharge.

**V.     Conclusion**

Qwest's motion to dismiss should be denied as to the Title VII and ADEA claims. The motion should be granted with respect to the breach of contract, breach of the covenant of good faith and fair dealing, and wrongful discharge claims.

**WHEREFORE,**

**IT IS ORDERED** that the Motion to Dismiss by Defendant Qwest Corporation (Doc. 4), filed on June 19, 2003, is **DENIED AS TO THE TITLE VII AND ADEA CLAIMS.**

**IT IS FURTHER ORDERED** that the Motion to Dismiss by Defendant Qwest Corporation (Doc. 4), filed on June 19, 2003, is **GRANTED AS TO THE BREACH OF CONTRACT,**

**BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, AND WRONGFUL DISCHARGE CLAIMS.**

_____
**ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE**